**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| TITLEMAX OF SOUTH CAROLINA, INC.<br><br>Plaintiff,<br><br>v.<br><br>BRANDON HALIK, ROTANZA HURT, and STATE OF NORTH CAROLINA<br><br>Defendants. | Civil Action No.  4:24-cv-4714-JDA<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff TitleMax of South Carolina, Inc. ("TitleMax"), by and through its undersigned counsel, brings this action against Defendants State of North Carolina and individuals Brandon Halik and Rotanza Hurt (Defendants Halik and Hurt are together referred to as "Individual Defendants"), for Declaratory Judgment under 28 U.S.C. § 2201 and Fed. R. Civ. P. 47. Specifically, TitleMax seeks a declaration that:

(i)     the North Carolina Consumer Finance Act (N.C. Gen. Stat. § 53-165, *et seq.*) (the "NC Finance Act"), North Carolina usury law (N.C. Gen. Stat. §§ 24-1.1, *et seq.*) ("NC Usury Law"), and/or the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. §§ 75-1.1, *et seq.*) (the "NC UDTPA") violate, on their face and as applied to TitleMax's consumer loans to Individual Defendants, the United States Constitution; and, therefore,

(ii)    the consumer loans TitleMax made to the Individual Defendants are not subject to, invalidated by, or in violation of those unconstitutional North Carolina laws.

Accordingly, TitleMax states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      TitleMax is a South Carolina corporation with its principal place of business in Georgia at 15 Bull Street, Ste. 200, Savannah, GA 31401. It has no North Carolina presence.

2.      Upon information and belief, Defendant Brandon Halik is a resident of New Hanover County, North Carolina.

3.      Upon information and belief, Defendant Rotanza Hurt is a resident of Hoke County, North Carolina.

4.      The State of North Carolina is named as a Defendant because TitleMax seeks a declaration from the Court that certain North Carolina statutes violate the United States Constitution.

5.      The relevant statutes contemplate enforcement by the State of North Carolina, including through the North Carolina Attorney General (*see*, *e.g.*, N.C. Gen. Stat. §§ 75-15.1–2, 53-166), and neither the State of North Carolina nor the North Carolina Attorney General has indicated affirmatively that they will not enforce the statute.

6.      To the contrary, the State of North Carolina—through its Attorney General—has intervened in a related case in this District for the express purpose of defending the constitutionality of the same statutes challenged in this action. *See*, *e.g.*, *Auto Money North LLC v. Walters et al.*, Case No. 23-CV-02952-JDA, Dkt. No. 38 (Jan. 4, 2024).[1] In a related press

---

[1] TitleMax moved to intervene in that case to assert the present claims on July 1, 2024. *Id.*, Dkt. No. 96. Briefing was completed on that motion on July 22, 2024. *Id.*, Dkt. No. 100. However, prior to ruling on the motion to intervene, the *Auto Money* court stayed proceedings through at least October 18, 2024 "to allow the parties an opportunity to reach final settlement[,]" necessitating the filing of this lawsuit. *Id.*, Dkt. No. 117. If the *Auto Money* court ultimately permits TitleMax to intervene, TitleMax will voluntarily dismiss this Complaint and pursue its rights in that case.

release, the North Carolina Attorney General indicated the State's intent to continue to enforce the statutes. *See Attorney General Stein Fights to Protect North Carolinians from High Interest Loans* (Feb. 22, 2024) ("'We kicked predatory, payday, and car title lenders out of North Carolina years ago, and we're not letting them back in,' said Attorney General Josh Stein. 'I will not let this lender or others levy illegal high interest loans against North Carolinians.'"), *available at* *https://ncdoj.gov/attorney-general-stein-fights-to-protect-north-carolinians-from-high-interest-loans/*. By its own admission and by its affirmative decision to intervene in the *Auto Money North* case, North Carolina seeks to promote enforcement of the unconstitutional NC laws against out-of-state lenders like TitleMax.

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00.

8.     Alternatively, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 2201, as the Complaint asserts claims arising under the Constitution and the laws of the United States, and it seeks a declaration of rights and other legal relations under the Constitution and the laws of the United States.

9.     Venue is proper in South Carolina under 28 U.S.C. § 1391(b)(2) because all acts giving rise to the relationships and agreements between the parties and all claims at issue took place in South Carolina.

10.     This Court has personal jurisdiction over the Individual Defendants in that the actions of the Individual Defendants giving rise to this Complaint all occurred in South Carolina. More specifically, and among other things, Individual Defendants voluntarily traveled to TitleMax's stores in South Carolina for the purpose of negotiating, applying for, and entering into the relevant loan agreements with TitleMax.

11.    TitleMax files this declaratory judgment action to determine the parties' rights and liabilities to each other.

12.    This Court's declaration as to the legal relationship between the parties and as to the interplay between state law and the U.S. Constitution will clarify unsettled legal issues between the parties and as to similarly situated customers of TitleMax.

13.    This Court has a substantial public interest in determining the issues presented by this Complaint. TitleMax (as well as other similarly situated title lenders) is a licensed supervised lender regulated by the South Carolina Board of Financial Institutions, Division of Consumer Finance, and Department of Consumer Affairs and, at all times relevant to this action, operated in compliance with applicable South Carolina law and entirely within South Carolina's borders. Individual Defendants, however, have sued TitleMax in North Carolina state court, *Ray et al. v. TitleMax of Virginia, Inc. et al.*, 24CV011277-400 (Guilford County, N.C.) (the "N.C. State Case"), and are attempting to use the unconstitutional North Carolina laws, in an unconstitutional manner, to punish and penalize TitleMax for, and to prevent TitleMax from, operating its lawful business in compliance with South Carolina's laws and inside its borders.

## **FACTS**

14.    TitleMax is a regulated lending entity that makes consumer loans as a "supervised lender" under South Carolina statute. Specifically, TitleMax makes consumer loans secured by vehicle titles—commonly referred to as "title-secured loans." Title-secured loans made by TitleMax are "supervised loans," subject to auditing and inspection by the Consumer Finance Division of the South Carolina Board of Financial Institutions and the South Carolina Department of Consumer Affairs.

15.    TitleMax holds an individual branch supervised lending license for each of its store locations, which has been issued by the South Carolina Board of Financial Institutions, Division of Consumer Finance, as well as a Maximum rate schedule and a Consumer Credit Grantor notification issued by the South Carolina Department of Consumer Affairs. TitleMax has this license displayed prominently on the interior wall of the corresponding store location in South Carolina.

16.    TitleMax currently operates the locations from which the Individual Defendants obtained their loans, which are physically located in South Carolina.

17.    TitleMax does not make loans within the State of North Carolina.

a.    It does not have any store locations in North Carolina.

b.    It does not maintain employees or agents in North Carolina.

c.    It does not have bank accounts in North Carolina.

d.    It does not direct any marketing or advertising at North Carolina.

e.    It does not negotiate loans or make offers to lend money over the phone, email, or the internet with North Carolina customers.

f.    It does not execute any loan documents in North Carolina.

g.    It does not have any physical offices to accept loan payments in North Carolina.

h.    Nothing on the TitleMax website—http://www.titlemax.com—is directed towards North Carolina residents. In fact, a search on the TitleMax website for the phrase "North Carolina" in quotations returns zero results. The website makes clear TitleMax has no physical locations in North Carolina, and persons in North Carolina do not qualify for any online-only loan offerings.

18.    TitleMax only makes loans within the state of South Carolina as required by governing South Carolina law.

   a.    All loan applications, including those of the Individual Defendants, are made in person and physically in the state of South Carolina.

   b.    TitleMax makes all loan offers in person and physically in the state of South Carolina, including the offers made to the Individual Defendants, and all discussions and negotiations occur in South Carolina.

   c.    The parties (including the Individual Defendants) execute all title loan documents physically in South Carolina.

   d.    TitleMax only disburses funds to borrowers, including the loan proceeds disbursed to the Individual Defendants, physically in South Carolina.

   e.    TitleMax only receives payment from borrowers (including the Individual Defendants) in South Carolina.

   f.    TitleMax does not personally solicit, while physically present in North Carolina, any borrowers, and did not personally solicit, while physically present in North Carolina, any of the Individual Defendants, to enter into any loan agreements with TitleMax.

19.    TitleMax's sole, limited contacts with the State of North Carolina related to Individual Defendants are that, on information and belief, Individual Defendants may have sent payments from North Carolina to TitleMax in South Carolina (TitleMax received those payments exclusively in South Carolina), and TitleMax filled out the requisite forms to record some liens perfecting their security interests as a matter of course. These payments and recordings, however,

took place after the Individual Defendants crossed borders and the relevant parties fully executed their respective loan agreements in South Carolina.

## SPECIFIC FACTS RELATED TO
## THE INDIVIDUAL DEFENDANTS' LOAN AGREEMENTS

20.    Defendant Brandon Halik voluntarily traveled to TitleMax's location in Little River, South Carolina, where in the TitleMax location wholly in South Carolina, he negotiated, applied to borrow, and accepted a loan offer from TitleMax with a security interest in the title to his vehicle.

21.    Defendant Halik's loan had a principal amount of $5,140.00, and to date, he has made payments to TitleMax totaling $22,046.44. Defendant Halik's loan has been paid off as of 11/17/2021.

22.    Defendant Rotanza Hurt voluntarily traveled to TitleMax's location in Dillon, South Carolina, where in the TitleMax location wholly in South Carolina, she negotiated, applied to borrow, and accepted a loan offer from TitleMax with a security interest in the title to her vehicle.

23.    Defendant Hurt's loan had a principal amount of $10,020.00 and to date, she has made payments to TitleMax totaling $42,295.62. Defendant Hurt's loan has been paid off as of 04/26/2022.

24.    While the Individual Defendants were present at TitleMax's store locations in Little River and Dillon South Carolina, they completed customer applications for title loans. TitleMax reviewed the customer applications, appraised and photographed the Individual Defendants' vehicles, negotiated the terms of the title loans, and prepared the supervised loan agreements, promissory notes, security agreements and any and all other documents relating to the loans. The

Individual Defendants then executed all documents pertaining to their respective loans in South Carolina.

25.     All the foregoing activities, including the offer, negotiation, acceptance and execution of the loan documents physically occurred on-site at TitleMax's locations in Little River and Dillon, South Carolina.

26.     Additionally, to apply for a loan with TitleMax, an applicant must provide: identification, a completed loan application, and the vehicle's title. TitleMax only accepts these items in person at its locations in South Carolina. The Individual Defendants provided these items in person at TitleMax's locations in Little River and Dillon, South Carolina.

27.     Before determining the actual amount of a title loan, TitleMax must also appraise the vehicle. Again, TitleMax only conducts appraisals physically at its locations in South Carolina. The appraisals of the Individual Defendants' vehicles were done at TitleMax's locations in Little River and Dillon, South Carolina.

28.     On or about May 15, 2024, Individual Defendants and others filed the NC State Case against TitleMax in Guilford County, North Carolina. Individual Defendants allege that TitleMax's loan agreements with Individual Defendants are unenforceable because they violate the NC Consumer Finance Act, the NC Usury Law, and the NC UDTPA, and that TitleMax is liable to each Defendant for, *inter alia*, treble damages, punitive damages of at least $25,000, interest, and attorney's fees.

29.     Defendants also request in the NC State Case an order (through their complaint and not yet by motion) compelling Plaintiff to arbitrate the claims and issues raised in the NC State Case.  If Plaintiff is compelled to arbitration, it will be deprived of its right to adequately challenge

and to have decided by the court whether the North Carolina laws violate the United States Constitution.

<u>**OVERVIEW OF SOUTH CAROLINA CONSUMER LENDING LAWS**</u>

30.    TitleMax is a regulated and licensed supervised lender and operates in compliance with South Carolina law and as required by South Carolina governmental agencies.

31.    The South Carolina Consumer Protection Code (S.C. Code. Ann. § 37- 3-101, *et seq.*) (the "SC Consumer Protection Code") applies to all consumer loans made in South Carolina, including supervised loans. *See* S.C. Code Ann. § 37-3-102.

32.    Section 37-3-104 of the SC Consumer Protection Code defines a "consumer loan" as: a loan made by a person regularly engaged in the business of making loans in which:

    a.    the debtor is a person other than an organization;

    b.    the debt is incurred primarily for a personal, family, or household purpose;

    c.    either the debt is payable in installments or a loan finance charge is made; and

    d.    either the principal does not exceed twenty-five thousand dollars or the debt is secured by an interest in land.

33.    Title-secured loans issued by TitleMax including those issued to the Individual Defendants, are "consumer loans" under South Carolina law. They are:

    a.    a loan to a person, rather than an organization;

    b.    incurred for primarily personal, family, or household purposes;

    c.    debts payable in installments; and

    d.    for a principal amount below the $25,000 statutory limit and not secured by land.

34.     The South Carolina Consumer Protection Code also regulates consumer loans as "supervised loans" under Part 5, S.C. Code. Ann. §§ 37-3-500 through 37-3-515.

35.     Section 37-3-501(1) defines a "supervised loan" as "a consumer loan in which the rate of the loan finance charge exceeds twelve percent per year as determined according to the provisions on the loan finance charge for consumer loans."

36.     The term "loan finance charge," defined at S.C. Code Ann. § 37-3- 109(1)(a), includes:

> All charges payable directly or indirectly by the debtor and imposed directly or indirectly by the lender as an incident to the extension of credit, including any of the following types of charges which are applicable: interest or any amount payable under a point, discount or other system of charges, however denominated, premium or other charge for any guarantee or insurance protecting the lender against the debtor's default or other credit loss, and, except as otherwise provided in this section….

37.     However, S.C. Code Ann. § 37-3-501(1) excludes from the definition of a "supervised loan":

> a.     a mortgage loan as defined in Section 37-22-110(30); or a closed end credit transaction, with an original repayment term of less than one hundred twenty days, unsecured by any interest in the consumer's personal property or secured by personal property, excluding motor vehicles that are free of any other liens or encumbrances, that does not have a market value that reasonably secures the amount of the loan, and the consumer:
>
> > i.     receives funds from and incurs interest or a fee payable to a creditor, and contemporaneously with, or any time after, the receipt of funds,

provides a check or other payment instrument to the creditor who agrees with the consumer not to deposit or present the check or payment instrument; or

ii.    receives funds from and incurs interest or a fee payable to a creditor, and contemporaneously with, or any time after, the receipt of funds, authorizes the creditor to initiate a debit or debits to the consumer's deposit account by electronic fund transfer or a remotely created check or remotely created consumer item as defined in Section 36-3-103(16).

38.    Under this definition, the title-secured loans issued by TitleMax, including those issued to the Individual Defendants, are "supervised loans." They are made for the personal use of consumers, are subject to loan finance charges which exceed twelve percent, are secured by motor vehicle titles, are not under secured, and are payable over a two-year period. They do not fall under any of the exclusions set forth in S.C. Code Ann. § 37-3-501(1).

39.    Under the South Carolina Consumer Protection Code, only a supervised financial organization or a licensed "supervised lender" may make supervised loans. S.C. Code Ann. § 37-3-502; see also S.C. Code Ann. § 37-3-501(2) (defining "supervised lender" as a "person authorized to make or take assignments of supervised loans").

40.    A supervised lender license can only be issued after the requesting party applies for, and otherwise qualifies to receive, a license. S.C. Code Ann. § 37-5-503. Maintaining a supervised lender license requires satisfying specific reporting requirements (as set forth in S.C. Code Ann. § 37-3- 505), remaining subject to examination and investigation by the State Board of

Financial Institutions (as set forth in S.C. Code Ann. § 37-3-506), and otherwise complying with the South Carolina Consumer Protection Code.

41.    If a supervised lender, like TitleMax, operates from multiple locations, it must maintain a separate license for each location. *See* S.C. Code Ann. § 37-3-503(4).

42.    The Individual Defendants executed their title loans while physically present at TitleMax's locations in Dillon and Little River, South Carolina, which at all times relevant, held a valid supervised lender license.

43.    Under S.C. Code Ann. § 37-3-305, all supervised lenders located within the State of South Carolina must file a rate schedule indicating the maximum interest charged to any borrower with the South Carolina Department of Consumer Affairs and post the filed maximum rate schedule in a conspicuous place in the location where the loan contracts are executed. Such filing and posting must be completed for each location, and the filing of the maximum rate is an annual requirement. S.C. Code Ann. § 37-3-305(7). All on-site rate postings must include the below language in at least fourteen-point font:

> Consumers: All supervised and restricted creditors making consumer loans in South Carolina are required by law to post a schedule showing the maximum rate of LOAN FINANCE CHARGES stated as ANNUAL PERCENTAGE RATES that the creditor intends to charge for various types of consumer credit transactions.

> The purpose of this requirement is to assist you in comparing the maximum rates that creditors charge, thereby furthering your understanding of the terms of consumer credit transactions and helping you to avoid the uninformed use of credit.

NOTE: Creditors are prohibited only from granting consumer credit at rates higher than those specified above. A creditor may be willing to grant you credit at rates that are lower than those specified, depending on the amount, terms, collateral and your credit worthiness. S.C. Code Ann. § 37-3-305(3).

44.    At all times relevant, TitleMax's Dillon and Little River stores satisfied the above filing and posting requirements for their maximum rate schedule, which indicated that loans issued by that location could have an interest rate of up to 300%.[2] The 300% maximum rate has been the customary maximum rate filed and maintained by all of TitleMax's locations at all relevant times. The State of South Carolina approved the maximum rate schedules for these locations. TitleMax posted certificates of those rates at each of its locations.

45.    The South Carolina Consumer Protection Code further provides specific, more stringent provisions for "short term vehicle secured loans," which are nonpurchase money consumer loans secured by vehicle titles with an original repayment period of greater than one month and less than 120 days. S.C. Code Ann. §§ 37-3-413(1) & (2). Short term vehicle secured loans may be renewed for up to 240 days from the original date of the loan. S.C. Code Ann. § 37-3-413(2).

46.    Short term vehicle secured loans are governed by stricter regulations than ordinary supervised loans. Lenders must require borrowers to provide information on employment, income, and expenses; borrowers must sign a statement attesting to their ability to repay the amount borrowed; lenders may not loan any amount greater than the fair market value of the collateral vehicle; and loan documents must include a conspicuous notice in fourteen-point font stating:

---

[2] Defendant Hurt's loans have interest rates of 95.32% to 96.11%, and Defendant Halik's loans have interest rates of 152.27% to 156.04%.

"THIS IS A HIGHER INTEREST LOAN. YOU SHOULD GO TO ANOTHER SOURCE IF YOU HAVE THE ABILITY TO BORROW AT A LOWER RATE OF INTEREST. YOU ARE PLACING YOUR VEHICLE AT RISK IF YOU DEFAULT ON THIS LOAN." S.C. Code Ann. §§ 37-3-413(3), (4), and (6)(a).

47.    TitleMax's loans to the Individual Defendants are not "short term vehicle secured loans" under the South Carolina Consumer Protection Code because they are for a two-year period. However, even though TitleMax's loans to the Individual Defendants are not "short- term vehicle secured loans," the Individual Defendants were asked to submit employment and financial information as part of the application process. Additionally, the loans did not exceed the fair market value of the collateral, and the Loan Agreements included similar notices to the "higher interest rate" notice set out above.

48.    As a regulated supervised lender, TitleMax continues to comply with the South Carolina licensing and consumer protection laws in the operation of its locations.

### STATUTORY PREDICATES FOR CAUSES OF ACTION BELOW

49.    N.C. Gen. Stat. § 53-190, entitled "Loans Made Elsewhere" states:

    (a) "No loan contract made outside this State in the amount or of the value of twenty-five thousand dollars ($25,000) or less, for which greater consideration or charges than are authorized by N.C. Gen. Stat. § 53-173 and N.C. Gen. Stat. § 53-176 of this Article have been charged, contracted for, or received, shall be enforced in this State. This subsection, however, does not apply to loan contracts in which all contractual activities, including solicitation, discussion, negotiation, offer, acceptance, signing of documents, and delivery and receipt of funds, occur entirely outside this State."

    (b) "If any lender or agent of a lender that makes loan contracts outside this State in the amount or of the value of twenty-five thousand dollars ($25,000) or less, comes into this State to solicit or otherwise conduct activities in regard to such loan contracts, then such lender is subject to the requirements of this Article."

50.    N.C. Gen. Stat. § 24-2.1(a)-(c) states:

(a) For purposes of this Chapter, any extension of credit shall be deemed to have been made in this State, and therefore subject to the provisions of this Chapter if the lender offers or agrees in this State to lend to a borrower who is a resident of this State or if such borrower accepts or makes the offer in this State to borrow, regardless of the situs of the contract as specified therein.

(b) Any solicitation or communication to lend, oral or written, originating outside of this State, but forwarded to and received in this State by a borrower who is a resident of this State, shall be deemed to be an offer or agreement to lend in this State.

(c) Any solicitation or communication to borrow, oral or written, originating within this State, from a borrower who is a resident of this State, but forwarded to, and received by a lender outside of this State, shall be deemed to be an acceptance or offer to borrow in this State.

51.    The Individual Defendants seek to treble the penalty they allege is owed to them under the NC Consumer Finance Act and recover attorney's fees under the NC UDPTA, which states "if damages are assessed . . . judgment shall be rendered . . . for treble the amount fixed by the verdict" (N.C. Gen. Stat. § 75-16) and "[i]n any suit instituted by a person who alleges that the defendant violated G.S. § 75-1.1, the presiding judge may, in his discretion, allow a reasonable attorney fee." (N.C. Gen. Stat. § 75-16.1.)

52.    Together these statutes—N.C. Gen. Stat. §§ 24-2.1(a)-(c), 53-190, and 75-1.1, et seq.—are sometimes referred to in this Complaint as "North Carolina Loan Statutes."

53.    TitleMax seeks a declaration and determination that the North Carolina Loan Statutes violate the United States Constitution, both on their face and as applied to TitleMax and its loan agreements with Individual Defendants (including through the enforcement of North Carolina consumer finance laws). TitleMax is a licensed South Carolina title lender and did not enter North Carolina to solicit or conduct activities with respect to Individual Defendants' loan agreements at issue.

15

a.  All contractual activities relating to Individual Defendants' loans, including solicitation, discussion, negotiation, offer, acceptance, signing of documents, and delivery and receipt of funds, occurred entirely outside of North Carolina.

b.  Neither TitleMax nor any of its agents or employees entered North Carolina to solicit or otherwise conduct activities in regard to any of Individual Defendants' loan contracts.

c.  TitleMax did not make any offer or agreement in North Carolina to lend to a borrower (including any Defendant) who is a resident of North Carolina.

d.  No borrower (including any Defendant) accepted or made an offer in North Carolina to borrow from TitleMax.

e.  TitleMax did not make any solicitation or communication to lend, oral or written, to any borrower (including to any Defendant) originating outside of North Carolina that it then forwarded or caused to be forwarded to and received in North Carolina by a borrower who is a resident of North Carolina.

f.  TitleMax did not receive or accept from a borrower who is a resident of North Carolina (including from any Defendant) an offer to borrow or a solicitation or communication to borrow, oral or written, that originated within North Carolina.

**FIRST CAUSE OF ACTION**
**(against Individual Defendants and State of North Carolina)**
**(Claim for Declaratory Judgment and Injunctive Relief Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution)**

54.  TitleMax incorporates the allegations of paragraphs 1 through 52 as if fully set forth herein.

55.    TitleMax is entitled to a declaratory judgment that the application of the NC Consumer Finance Act, the NC Usury Law, or the NC UDTPA to these South Carolina loans would violate TitleMax's substantive and procedural due process rights under the Fourteenth Amendment to the United States Constitution.

56.    The State of North Carolina does not have the authority to regulate lending occurring entirely outside of its borders.

57.    The State of North Carolina does not have the authority to enact procedural rules governing the enforcement of agreements in South Carolina courts.

58.    The application of the NC Consumer Finance Act, the NC Usury Law, or the NC UDTPA to TitleMax regarding its loan agreements with Individual Defendants would deprive TitleMax of its right to property and interfere with its right to freely contract.

59.    Even if North Carolina has substantial contact with the parties' transactions, the North Carolina Loan Statutes still may not be applied because, after weighing the considerable interests of South Carolina at play, North Carolina's interest is insufficient to justify the application of North Carolina law to these transactions.

60.    As applied to the Loan Agreements, the NC Consumer Finance Act, the NC Usury Law, or the NC UDTPA would be unconstitutional and violative of the Fourteenth Amendment.

**SECOND CAUSE OF ACTION**
**(against Individual Defendants and State of North Carolina)**
**(Claim for Declaratory Judgment and Injunctive Relief Under the First and**
**Fourteenth Amendments to the United States Constitution)**

61.    TitleMax incorporates the allegations of paragraphs 1 through 59 as if fully set forth herein.

62.    Under the First Amendment to the United States Constitution (as applied to the states through the Fourteenth Amendment), TitleMax has a constitutional right to free speech, including commercial speech, free from prior restraint and regulation by North Carolina statute.

63.    Under those provisions of the Constitution, TitleMax is guaranteed the right to free association and contracting with others, free from regulation or restriction by the state of North Carolina. By attempting to regulate the "solicitation, discussion, and negotiation" and "communication to lend" by TitleMax and other persons, the North Carolina Loan Statutes purport to regulate speech and have an impermissible chilling effect on speech, including TitleMax's speech.

64.    North Carolina has no valid interest in preventing North Carolina residents from hearing about TitleMax's South Carolina-based lending programs, which are lawful in South Carolina, where they operate.

65.    Even if North Carolina had a valid interest in regulating speech, including TitleMax's speech, the regulatory technique it uses does not directly advance whatever that interest may be, and the regulatory technique is excessively, improperly, and unlawfully disproportionate to whatever interest might be served. Thus, the North Carolina Loan Statutes are excessive, overbroad, and cannot survive. They are unconstitutional on their face.

66.    The NC Consumer Finance Act, the NC Usury Law, or the NC UDTPA are also unconstitutional as applied to TitleMax and its loan agreements with Individual Defendants. Those laws purport to impose monetary liability upon and punish TitleMax for its speech and associations. Applying the NC Consumer Finance Act, the NC Usury Law, or the NC UDTPA to prevent the enforcement of the parties' loan agreements and/or to impose monetary liability upon TitleMax would punish TitleMax for its speech and associations.

67.    TitleMax is entitled to a declaratory judgment that the NC Consumer Finance Act, the NC Usury Law, or the NC UDTPA, on their face and as applied to TitleMax and its loan agreements with Individual Defendants, which were negotiated and entered into in compliance with South Carolina's laws and inside its borders, violate TitleMax's right to free speech and association under the First and Fourteenth Amendments to the United States Constitution.

**THIRD CAUSE OF ACTION**
**(against Individual Defendants and State of North Carolina)**
**(Claim for Declaratory Judgment and Injunctive Relief Under the Full Faith and Credit Clause of the United States Constitution)**

68.    TitleMax incorporates the allegations of paragraphs 1 through 66 as if fully set forth herein.

69.    South Carolina has the authority to regulate lending activity physically occurring within its borders.

70.    As set forth above, all the relevant activity in the negotiation and execution of the Loan Agreements occurred physically in South Carolina.

71.    TitleMax has not taken any substantial action in North Carolina in connection with the Loan Agreements.

72.    South Carolina has a legitimate, substantial interest in regulating the lending of money within its borders.

73.    TitleMax's loan agreements with Individual Defendants fully comply with South Carolina's regulations and laws. Through the North Carolina Loan Statutes, North Carolina has adopted a policy of hostility to the public acts of South Carolina and other states.

74.    TitleMax is entitled to a declaratory judgment that the application of the NC Consumer Finance Act, the NC Usury Law, or the NC UDTPA would violate the full faith and

19

credit provisions of the United States Constitution, as it would invalidate South Carolina's right and authority to regulate lending within its borders.

### FOURTH CAUSE OF ACTION
**(against Individual Defendants and State of North Carolina)**
**(Claim for Declaratory Judgment and Injunctive Relief Under the Commerce Clause Based on Invalid Extraterritorial Application of the North Carolina Consumer Finance Act)**

75.     TitleMax incorporates the allegations of paragraphs 1 through 73 as if fully set forth herein.

76.     The Commerce Clause prohibits the State of North Carolina from applying its laws out of state to regulate commerce conducted outside the State of North Carolina.

77.     The North Carolina Loan Statutes seek to govern lending activities that are occurring solely within South Carolina.

78.     The North Carolina Loan Statutes impose a burden on interstate commerce that is clearly excessive of any legitimate governmental interest North Carolina may have in regulating lending activities occurring exclusively within South Carolina.

79.     Moreover, the North Carolina Loan Statutes are procedural statutes governing the enforcement of agreements in North Carolina courts. Applying procedural statutes to claims filed in South Carolina courts would further violate the Commerce Clause.

80.     TitleMax is entitled to a declaration that the application of the NC Consumer Finance Act, the NC Usury Law, or the NC UDTPA to TitleMax's loan agreements with Individual Defendants would violate the Commerce Clause, as doing so would interfere with commercial activity occurring exclusively in South Carolina.

## PRAYER FOR RELIEF

WHEREFORE, TitleMax respectfully requests that this Court enter a declaratory judgment ordering the following relief:

A. A Declaration that the application of the NC Consumer Finance Act, the NC Usury Law, or the NC UDTPA to TitleMax or its loan agreements entered into with the Individual Defendants violates the Due Process Clause of the United States Constitution;

B. A Declaration that the NC Consumer Finance Act, the NC Usury Law, or the NC UDTPA violate the First and Fourteenth Amendments to the United States Constitution;

C. A Declaration that the application of the NC Consumer Finance Act, the NC Usury Law, or the NC UDTPA to TitleMax or its loan agreements entered into with the Individual Defendants violates the First and Fourteenth Amendments to the United States Constitution;

D. A Declaration that the application of the NC Consumer Finance Act, the NC Usury law, or the NC UDTPA to TitleMax or to the Loan Agreements entered into with the Individual Defendants violates the Full Faith and Credit Clause of the United States Constitution;

E. A Declaration that the application of the NC Consumer Finance Act, the NC Usury Law, or the NC UDTPA to TitleMax or to the Loan Agreements entered into with the Individual Defendants violates the Commerce Clause of the United States Constitution;

F. An Order holding that the NC Consumer Finance Act, the NC Usury law, and the NC UDTPA shall not be applied to TitleMax or to the Loan Agreements entered into with the TitleMax; and

G. For such other and further relief as this Court deems just and appropriate.

Dated: August 29, 2024

Respectfully submitted,

s/ Thomas L. Stephenson
Thomas L. Stephenson (Fed. Bar No. 4299)
Stephenson & Murphy, LLC
207 Whitsett St.
Greenville, SC  29601
Phone:  (864) 370-9400
Fax:  (864) 240-9292
tom@stephensonmurphy.com

-and-

**VENABLE LLP**
*Applications for appearance pro hac vice*
*forthcoming*
Abram I. Moore
Daniel J. Hayes
Nelson M. Hua
Nicole E. Feldman
227 West Monroe St., Suite 1900
Chicago, IL 60606
(312)-820-3439

*Attorneys for Plaintiff*
*TitleMax of South Carolina, Inc.*